IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**SAMUEL JAY JOHNSON,**

        **Plaintiff,**

        v.                    CASE NO. 13-3042-SAC

**PETE FIGGINS,**
**Sheriff, et al.,**

        **Defendants.**

## MEMORANDUM AND ORDER

This pro se civil complaint was filed pursuant to 42 U.S.C. § 1983 by an inmate of the Wilson County Correctional Center, Fredonia, Kansas. Plaintiff claims that he was denied medical care. The court finds that the complaint fails to state a claim under the Eighth Amendment, and requires plaintiff to cure the deficiencies discussed herein or the matter will be dismissed.

## FILING FEE

The statutory fee for filing a civil rights complaint is $350.00. Plaintiff has submitted an Application to Proceed without Prepayment of Fees (Doc. 2). Having considered the motion together with the attached financial information, the court finds that plaintiff presently lacks funds to pay the fee in full or in part. Accordingly, the motion is granted. Plaintiff is reminded that

1

under 28 U.S.C. § 1915(b)(1), being granted leave to proceed without prepayment of fees does not relieve him of the obligation to pay the full amount of the filing fee.  Instead, it entitles him to pay the fee over time through payments automatically deducted from his inmate trust fund account as funds become available pursuant to 28 U.S.C. § 1915(b)(2).

**ALLEGATIONS AND CLAIMS**

Plaintiff names as defendants Wilson County Sheriff's Department; Wilson County Correctional Facility (WCCF); Wilson County, Kansas; Sheriff Pete Figgins; and the following employees of the WCCF: Jason Ratzlaff, Lieutenant; Daniel McMurray, Sergeant; Judy Micus, Former Lieutenant; and M. Kirk Hartnett, Former Captain. As the factual background for this lawsuit, plaintiff alleges the following. On October 24, 2012, he was given double his normal dose of the medication "gabapintin."  He questioned the amount, and Sergeant Doane who was passing out meds rechecked his chart and told him the increased dose was correct.  Within an hour, plaintiff felt light-headed and dizzy and his "heart started acting really weird."[1] He told Sgt. Doane about these symptoms and asked if she was sure the new dose was correct.  Then he was informed that he should not have been given that much.  Sgt. Doane left to call the doctor and

---

[1] Later in his complaint, plaintiff alleges that he "was already having problems on the gabapintin including dizziness, delusions, nausea, and muscle tremors," which he describes as side effects.

2

didn't come back.  Plaintiff later spoke to Officer Curry who said there was nothing he could do and that Sgt. Doane had told him the doctor had said plaintiff would be OK.  Plaintiff alleges that one could see through his shirt that his heart was "jumping around and then locking up."  "A little while later" plaintiff passed out, fell, and was injured.  Later that night Curry and Doane found plaintiff, got him into bed, and took his blood pressure which was 75/132 but nothing else was done.  The next morning he was still in a lot of pain and his heart was "still skipping around."  He had difficulty getting up to get his meds and yelled for another inmate to get help. Sergeant Jason Ratzlaff told him to shut up or he would go to the hole.  Johnson continued to yell for help, and "several officers" were sent with the nurse to take him to the hole.  The nurse called the Physician's Assistant (PA) who said there was nothing wrong with him and insisted that he get up.  The PA poked him in his ribs and chest, told the nurse to give him Tylenol and Ibuprofen for pain, but did not check his heart.  Plaintiff could not move for several days, and his meds and meals were brought into his cell.  He wrote grievances.  On November 2, 2012, he was taken to medical complaining of "on going pains in (his) heart and left side" and his nose, which he guesses was injured when he passed out.  Sheriff Figgins told plaintiff that the PA had observed him by camera and said he had nothing wrong with his heart and no long term effects from his injuries, but Mr. Johnson "was not moved to a medical cell with a

3

camera until almost a week later." On January 5, 2013, "the then Nurse" promised to get plaintiff to a cardiologist and an Ear, Nose, and Throat Specialist, but that never happened. He has "continuously had problems" and been promised help, but has been put off until the PA made rounds and for other reasons.

On February 1, Mr. Johnson was given the wrong dose for hypertension based on his chart, even though staff knew it was wrong. He was given the correct dose for a couple days, and then the wrong dose again. He states that he is "continually" given the wrong dose and then "staff" refuses to do anything. Plaintiff complains that the person who provides medical services at the jail is actually a PA and he is being denied the right to be examined and treated by a "real licensed doctor." He also complains that he was "billed" for a doctor visit when staff overdosed him but no doctor examined him; Sheriff Figgins told him he "wasn't given help" because it cost too much; and Figgins is trying to act like nothing happened and plaintiff wasn't injured.

Plaintiff alleges that he exhausted administrative remedies on his claims, and complains that his grievances have been irrationally answered with "already seen and treated for problems" like nosebleed or headache, or "contact your attorney." He further alleges that when he wrote grievances "the Nurse in Medical" and Ratzlaff bickered about who was at fault while doing nothing for plaintiff. He also alleges that he has been limited to two grievances a week, and most

are still not answered.

As the single count in his complaint, Mr. Johnson claims he has the right to proper medical care for his injuries, which includes being seen by a "real doctor" and cardiologist. He seeks "proper medical care by a doctor not an Assistant or a Nurse," and "monetary compensation" because he was injured due to staff actions and denied proper medical care for his injuries and pain. He also seeks to have the jail staff, "this facility," and the County pay all medical expenses he has incurred while incarcerated at the WCCF.

**SCREENING**

Because Mr. Johnson is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim upon which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).

**STANDARDS**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988)(citations omitted); *Northington*

5

*v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). However, the complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). To avoid dismissal, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. There must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed (the plaintiff); and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."

6

*Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

With respect to plaintiff's claim of denial of medical treatment in particular, the Eighth Amendment provides prisoners the right to be free from cruel and unusual punishment. The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Boyett v. County of Washington*, 282 Fed.Appx. 667, 672 (10th Cir. 2008)(unpublished)[2] (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). To make out a constitutional deprivation under the deliberate indifference standard, a plaintiff must prove two elements: (1) objectively, the inmate's medical needs were "sufficiently serious," and (2) subjectively, the prison official acted with a "sufficiently culpable state of mind." *Self v. Crum*, 439 F.3d 1227, 1230-31 (10th Cir.), *cert. denied,* 549 U.S. 856 (2006); *see also Mata*, 427 F.3d at 751; *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). In the objective analysis, the inmate must show the presence of a "serious medical need," that is, "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Martinez*, 430 F.3d at 1304. A medical need is sufficiently serious

---

[2] Unpublished cases are cited herein for persuasive reasoning and not as controlling authority.

7

if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)(quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). A prison official has a sufficiently culpable state of mind if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Estelle*, 429 U.S. at 106; *Martinez*, 430 F.3d at 1304 (citing *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Martinez,* 430 F.3d at 1305 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)); *Self*, 439 F.3d at 1231 (quoting *Farmer*, 511 U.S. at 837).

An inadvertent failure to provide adequate medical care "fail[s] to establish the requisite culpable state of mind." *Estelle*, 429 U.S. at 106; *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). It follows that an inadvertent mistake in administering medication constitutes medical negligence at most. *See Estelle*, 429 U.S. at 106. Negligent treatment does not constitute a medical wrong under the Eighth Amendment. *Bruner-McMahon v. Hinshaw*, 846 F.Supp.2d 1177, 1211 (D.Kan. 2012). As the United States Supreme Court has explained:

[A]n inadvertent failure to provide adequate medical care

> cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle*, 429 U.S. at 105-106 (footnote omitted).

Likewise, a mere difference of opinion between the inmate and prison or jail medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106-07; *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993)(affirming that a quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992)(Plaintiff's contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984)(A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.); *Oxendine v. Kaplan*, 241 F.3d 1272, 1277 n. 7 (10th Cir. 2001). The prisoner's right is to medical care-not to the type or scope of medical care he personally desires.

Furthermore, "[d]elay in [providing] medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d

9

at 1210. The Tenth Circuit has held that the "substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 949, 950 (10th Cir. 2001).

To establish supervisory liability in a § 1983 action, the plaintiff must show that: (1) a defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy; (2) the policy caused the alleged constitutional harm; and (3) defendant acted with the state of mind required to establish the alleged constitutional deprivation.

**DISCUSSION**

Plaintiff's allegations are deficient in three main ways. First, he does not allege facts showing the personal participation of any named defendant in the alleged overdose or two erroneous doses or in the failure to provide medical care for injuries resulting from his fall. For example, plaintiff does not allege that Sheriff Figgins had any personal involvement in administering his medication or providing medical treatment. His claim that he was denied administrative relief by certain jail employees is not sufficient to show their personal participation in the underlying events. The only names mentioned in the complaint in connection with the "gabapintin" overdose incident are Doane and Curry, and they are not defendants. No one is named as having given the incorrect doses of

10

hypertension medication. Plaintiff mentions Ratzlaff in his complaint, but only as telling him to shut up or he would go to the hole. This verbal encounter was followed by plaintiff being examined by the PA, who is also not a defendant. Thus Mr. Johnson fails to allege facts to establish personal participation on the part of each defendant, which is an essential element of his claim. By failing to describe each defendant's personal participation, plaintiff also fails to indicate that each defendant knew of and disregarded an excessive risk to his health or safety. Thus, he fails to satisfy the subjective component of the deliberate indifferent test. *Farmer*, 511 U.S. at 837.

Plaintiff similarly fails to allege sufficient facts in his complaint to hold the WCCF or the Wilson County Sheriff's Department liable. The WCCF is a jail facility that may be a department of and/or operated by the county; however, it is not a separate suable entity. While a city, county, or municipality may be named as a defendant in a civil rights action, it has been held that governmental sub-units or departments are not separate suable entities and are not proper defendants in a § 1983 action. *Lindsey v. Thomson*, 275 Fed.Appx. 744, 747 (10th Cir. 2007)(unpublished)(*citing Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992)(Sheriff's departments are not usually considered legal entities subject to suit.), *citing Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985), *vacated as moot*, *Tyus v. Martinez*, 475 U.S. 1138 (1986)); *see also Ketchum v.*

11

*Albuquerque Police Dept.*, 958 F.2d 381, at *2 (10th Cir. Mar. 12, 1991)(unpublished)(Neither a municipal police department nor a county detention center is a suable entity because it lacks a legal identity apart from the municipality). In addition, plaintiff does not allege sufficient facts to hold the County or the Sheriff in his official capacity liable because he does not describe either a policy or practice of the County or the Sheriff and explain how it was unconstitutional or how it caused the claimed violation of plaintiff's constitutional rights. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 692 (1978). Isolated, sporadic incidents do not suggest a county custom. *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996).

Second, plaintiff baldly alleges that he was injured in a fall, but does not describe his injury so that it may be identified as "sufficiently serious." He claims he exhibited symptoms from the overdose that were similar to the side effects he normally had from the medication and does not allege any lasting injury. Since he fails to adequately describe his injuries, he also fails to allege facts showing that he was denied the appropriate medical care for those injuries or that his symptoms were such that a jail employee knew the risk of serious harm existed and drew the inference.

Third, plaintiff's factual, as opposed to his conclusory, allegations indicate that he received rather than was denied medical attention. A court need not accept "mere conclusions characterizing

12

pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990). Mr. Johnson's claim thus appears to be based upon his disagreement with the medical attention and treatment that he did receive, and particularly the fact that it was provided by nurses and a PA rather than a doctor. Plaintiff does not allege facts showing an injury from his fall that required treatment other than the examination and pain medication that was provided. There is no general entitlement to be treated by a medical doctor or specialist. In sum, the court finds that plaintiff has failed to state sufficient facts to support a claim against any of the named defendants of unconstitutional denial of treatment for a sufficiently serious medical need.

**PLAINTIFF REQUIRED TO SHOW CAUSE**

Plaintiff is given time to cure the deficiencies in his complaint that have been discussed herein or to otherwise show cause why this action should not be dismissed for failure to state facts to support a federal constitutional claim. He may do so by filing an Amended Complaint.[3] If he fails to cure the deficiencies

---

[3] In order to add claims, significant fact allegations, or change defendants, the plaintiff must submit a complete Amended Complaint. *See* Fed.R.Civ.P. Rule 15. An Amended Complaint is not simply an addendum to the original complaint, but completely supersedes it. Therefore, the Amended Complaint must name all parties and contain all claims the plaintiff intends to pursue in the action, including any raised in the original complaint to be retained. Any claims not included in the Amended Complaint are no longer before the court. Plaintiff must write the number of this case (13-3042) at the top of the first page of his Amended Complaint. He must name every defendant in the caption of the complaint and again in its body where he must also describe the personal participation of each.

discussed herein or to show good cause within the prescribed time, this action may be dismissed without further notice.

**IT IS THEREFORE ORDERED** that plaintiff's Application for Leave to Proceed without Prepayment of Fees (Doc. 2) is granted. Plaintiff is hereby assessed the full filing fee of $350.00, and the Finance Office of the Facility where plaintiff is currently incarcerated is directed to collect from plaintiff's inmate account and pay to the clerk of the court twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until plaintiff's outstanding filing fee obligation(s) are paid in full. Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee, including but not limited to providing any written authorization required by the custodian or any future custodian to disburse funds from his account.

**IT IS FURTHER ORDERED** that plaintiff is given thirty (30) days in which to show cause why this action should not be dismissed for failure to show the personal participation of each defendant and to allege sufficient facts to support a constitutional claim of denial of medical treatment.

**IT IS SO ORDERED.**

Dated this 24th day of April, 2013, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge